Skiba v. Whitcomb, No. S1232-01 CnC (Katz, J., Jan. 21, 2004)


[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT                           SUPERIOR COURT

Chittenden County, ss.:                    Docket No. S1232-01 CnC


CATHERINE SKIBA


v.


HAROLD L. WHITCOMB &
ELIZABETH LEGGETT


ENTRY
(Motion to Disqualify and Compel Deposition)


        Plaintiff has made two motions regarding defendant Leggett's attorney, Catherine Clark. Plaintiff requests that Clark be compelled to give a deposition. Regardless of whether or not this is granted, plaintiff requests that Clark withdraw from the case. Both of these requests stem from Clark's role as attorney for defendant Whitcomb in probate proceedings which led to the creation of the Art Trust Agreement against which defendants, in the present case, are alleged to have committed fraud

and conversion.

Under the Vermont Rules of Professional Conduct, an attorney must withdraw if she is likely to be a necessary witness unless: 1) the testimony is about an uncontested issue; 2) the testimony relates to nature and value of legal services rendered; or 3) disqualification would render "substantial hardship on the client." Vt. Rule of Prof. Cond't 3.7. Although the rules do not define what a "necessary witness" is, the requirement of "necessary," rather than merely "relevant," appears to create a higher standard for application. This fits with the first stated purpose of Rule 3.7, which is the protection of the client. Vt. Rule of Prof. Cond't 3.7 cmt. As commentators have noted, "the purpose of the rules is not to gain a tactical advantage, but to protect clients, opposing counsel, and the public's perception of the legal system." Brian Altman & Jordan Smith, Utilizing the Substantial Hardship Exception to Model Rule 3.7, 15 Geo. J. Legal Ethics 619, 622 (2002). Under this standard we are dubious of plaintiff's request to remove Clark. As a rule of Professional Conduct, 3.7 requires "voluntary compliance." Vt. Rule of Prof. Cond't II Scope. It is incumbent on each attorney to first and foremost examine whether or not her role as counsel has been compromised. Only after that opportunity for self-censure can opposing counsel challenge. Since Clark has apparently looked within and found no conflict or reason to believe that she is a necessary witness, we will examine the plaintiff's arguments for compelling the deposition.

Plaintiff propounds that the Art Trust Agreement is ambiguous and that Clark must be questioned on the meaning of the language. (Pl. Mot. to Compel Dep. at ¶ 10). Even if the agreement is deemed ambiguous, it is unclear what light Clark's testimony would shine on the intent of the parties, all of whom are alive and available to testify as to what they

intended the agreement to mean. Our court has recently re-emphasized that the unexpressed mental impressions of parties to an agreement are not relevant, even as parol evidence Quenneville v. Buttolph, 2003 Vt. 82, ¶ 15. If such impressions of the parties are irrelevant, why would such private beliefs of the scrivener be relevant? Clark's testimony could address scrivener's intent but little more since she was counsel, not party, to the agreement. While this may be relevant to explaining some ambiguous word choice, see Putnam v. Am. Bible Soc'y, 37 Vt. 271, 278 (1864), it is less than necessary to the case.

Plaintiff would also like to examine Clark about her files and correspondence during the formation of the Art Trust. (Pl. Mot. to Compel Dep. at ¶¶ 6–9). There is a two-fold problem with this realm of testimony. First, plaintiff's line of questioning veers directly into the heart of the attorney-client privilege. While the documents themselves may have been disclosed and certain utterances made in public, much of Clark's advice, knowledge, and communications are still protected by V.R.E. 502. Second, without speculating on which information falls under the umbrella of V.R.E. 502, it is equally apparent that this testimony is less than necessary. As plaintiffs admit in their brief, "if plaintiff can establish that Clark discussed this obligation with Leggett and Whitcomb, it will *strengthen* evidence of their intentional wrongdoing." (Pl. Mot. to Compel Dep. at ¶ 7, emphasis added). Strengthening is altogether different from necessary. Plaintiff's case could ultimately be more persuasive if Clark testified to everything she knew, but the testimony is not necessary to prove the case, especially where all of the relevant parties are alive and available. Plaintiff's argument is one of preference. She would prefer to have Clark's testimony over Whitcomb's. Id. at ¶ 11. Although Whitcomb is elderly and frail, we will not presume him to be an incompetent witness. Rule 3.7 is not about preferences or relevance, it is about attorneys becoming so

inextricably tied to the underlying facts that their testimony becomes a necessary element in the case. In this case, information plaintiff seeks does not rise to that level and cannot be the basis for dismissal. Even still, an attorney may represent the client despite her role as a necessary witness if removal would bring about substantial hardship. Vt. Rule of Prof. Cond't 3.7(a)(3). Certainly there is evidence that Clark's removal, on the eve of trial, would cause defendant great harm.

Plaintiff's similar contention for disqualification on a potential conflict of interest under Vt. Rule of Prof. Cond't 1.7 and 1.9 is unpersuasive. As the potential conflict of interest lies between co-defendants and not with the plaintiff, Clark should not be compelled to withdraw based on the plaintiff's reasoning, altruistic as it may be. Defendant Leggett has not proffered a defense that is adverse to defendant Whitcomb. Short of a clear conflict of interest and lack of waiver, disqualification is a bridge too far. To do otherwise would rob the defendant of her choice of counsel in exchange for a dubious clarification of interests. We also have in mind the practical issue of Leggett's limited means—if Clark is ruled disqualified, her client may well not be able to afford to educate a new attorney about this thorny and recondite litigation.

Therefore, Clark will not compelled to attend a deposition. As the Eighth Circuit has written, attorney depositions are a "negative development . . . that should be employed in only limited circumstances." Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986); see also Timothy Flynn, On "Borrowed Wits": A Proposed Rule for Attorney Depositions, 93 Colum. L. Rev. 1956 (1993). This disinclination is fueled by fears that such depositions will lead to the disqualification of attorneys, additional stress and burdens on the counsel and client, and a chilling of client-attorney communications. Flynn, at 1958. Here, these concerns are

further complicated by the attorney-client privilege that Clark has asserted over her testimony.  In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003).  Given that plaintiff has access to all other witnesses for the relevant information, we are disinclined to grant a motion that promises to fulfill several of the Eight Circuit's fears in return for non-necessary testimony.

Plaintiff's motions to compel Attorney Clark's testimony and disqualification are denied.

Dated at Burlington, Vermont_____, 2004.


_____
Judge